O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>    v.<br><br>JAMAR DWAYNE GREER,<br><br>               Defendant. | Case No. CV 12-02352 DDP ✓<br>[CR 06-00466 DDP]<br><br>ORDER DENYING PETITIONER'S MOTION<br>FOR RELIEF PURSUANT TO 28 U.S.C.<br>§ 2255<br><br>[Docket No. 1 ] |

**I.    BACKGROUND**

After a jury trial, Petitioner Jamar Dewayne Greer ("Greer" or "Petitioner") was convicted of conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii)(II), 846. (06-CR-00466-DDP-5 ("CR") Dkt. No. 341.) Greer timely appealed his conviction (CR Dkt. No. 401), and the Ninth Circuit affirmed the conviction (the Ninth Circuit Court of Appeals Case No. 09-50120 (the "9th CCA") Dkt. No. 51). Greer petitioned for rehearing en banc and that petition was denied. (9th CCA Dkt. Nos. 58, 59.)  Greer filed a petition for certiorari with the Supreme Court and that petition was denied as well. (9th CCA Dkt. No. 62.)

On March 20, 2012, Greer filed the instant motion under 28 U.S.C. § 2255. Greer claims that (1) the indictment against him failed to allege all elements of the crime because it did not allege an effect on commerce; (2) 21 U.S.C. §§ 841, 846 were unconstitutional as applied him because "his conduct was purely local in nature and should be left to the states to punish"; (3) the court failed to conduct a sufficient inquiry into the contact between jurors and a co-defendant's family member; and (4) his attorneys provided ineffective assistance of counsel (I) by failing to request the court to inquire the jurors about contact, (ii) by failing to object when the court did not conduct the inquiry, (iii) by failing to request a mistrial, and (iv) by failing to raise these issues on appeal. (Dkt. No. 1.)

## II. LEGAL STANDARD

A petitioner may move to vacate, set aside, or correct his/her sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). If any of these grounds exist, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

Under section 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and records of the case *conclusively show* that the prisoner is entitled to no relief."

2

<u>United States v. Blaylock</u>, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting 28 U.S.C. § 2255) (emphasis and alternation in original). "The district court may deny a section 2255 motion without an evidentiary hearing only if the movant's allegations, viewed against the record, either do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." <u>United States v. Mejia-Mesa</u>, 153 F.3d 925, 931 (9th Cir. 1998) (quoting <u>United States v. Burrows</u>, 872 F.2d 915, 917 (9th Cir.1989)).

**III. DISCUSSION**

    **A.    Indictment need not allege an effect on commerce.**

Elements of an offense must be charged in the indictment. <u>Jones v. United States</u>, 526 U.S. 227, 232 (1999). However, when Congress enacts a statute under its commerce power, "it is not constitutionally obligated to require proof beyond a reasonable doubt that each individual act in the class of activities regulated had an effect on interstate commerce." <u>United States v. Lane</u>, 883 F.2d 1484, 1492 (10th Cir. 1989). Indeed, contrary to Greer's assertion, an effect on commerce is not an element for the crime of possession with intent to distribute cocaine or conspiracy to distribute under 21 U.S.C. §§ 841, 846. See <u>United States v. Magallon-Jimenez</u>, 219 F.3d 1109, 1112 (9th Cir. 2000) ("To sustain a conviction for possession with intent to distribute cocaine, the government must prove that the defendant (1) knowingly, (2) possessed the cocaine, (3) with intent to distribute it."); <u>United States v. Hall</u>, 551 F.3d 257, 268 n. 13 (4th Cir. 2009) (holding that the elements of a § 846 conspiracy are "(1) an agreement between two or more persons to violate federal law relating to

3

controlled substances; (2) knowledge of the essential objectives of the conspiracy; (3) knowing and voluntary involvement therein; and (4) interdependence among the conspirators"). Therefore, the indictment does not require an allegation of the effect on commerce.

**B.   21 U.S.C. §§ 841, 846 are constitutional as applied to Greer.**

Greer also argues that the federal government has no jurisdiction to prosecute him for his "purely local conduct." (Request for Leave to Amend 28 U.S.C. § 2255 Motion, p. 3; Rebuttal to Opposition, p. 2.) This argument is without merit. It is well established that Congress may constitutionally regulate intrastate drug activity under 21 U.S.C. §§ 801 et seq (the "Controlled Substances Act"). United States v. Visman, 919 F.2d 1390, 1393 (9th Cir. 1990). In the instant context, "Congress may regulate those wholly intrastate activities which have an effect upon interstate commerce." Id. at 1392. Congress has made explicit findings that conducts regulated by the Controlled Substances Act have "substantial and direct effect upon interstate commerce." United States v. Wacker, 72 F.3d 1453, 1475 (10th Cir. 1995) (citing 21 U.S.C. § 801(3)-(6)). Therefore, "no proof of interstate nexus is required in order to establish jurisdiction." United States v. Montes-Zarate, 552 F.2d 1330, 1331 (9th Cir. 1977).

**C.   The brief contact between the Jurors and a co-defendant's family member was not prejudicial.**

On August 14, 2008, the government reported to the court that a contact occurred between Alternate Juror No. 1 and the mother of

4

a co-defendant Deon Lopez ("Mrs. Lopez") after the jury had begun its deliberations. (Reporter's Partial Transcript of Proceedings on August 14, 2008 ("Tr.") at 4:3-19.) The government reported that it heard Mrs. Lopez say to Alternate Juror No. 1 that "I'm sure you'd rather be going home now" while Mrs. Lopez and Alternate Juror No. 1 were standing at an elevator outside the courtroom. (Tr. at 4:16-17, 6:2-17.) The government vigorously requested that Alternate Juror No. 1 be excused. (Tr. at 5:18-20, 7:6-20, 8:8-17.) In response to the government's concern, the court questioned the Alternate Juror. (Tr. at 9:9-12:17.) Alternate Juror No. 1 stated that, although she did not remember exactly what was said, Mrs. Lopez "made some comment about [Alternate Juror No. 1] having to stay" while she was waiting for the elevator. (Tr. at 9:9-25.) Upon the court's further inquiry, the Alternate Juror revealed that Mrs. Lopez had said something along the lines of "can you guess whose mothers we are" to her and Jurors Nos. 5 and 6 in the lunchroom on an earlier date. (Tr. at 10:4-11:16.) Alternate Juror No. 1 stated that the conversation in the lunchroom was very brief and "[n]othing about . . . the case." (Tr. at 10:20-11:1.) Neither counsel for the defense nor the government made any other inquiry concerning the contact between the jurors and Mrs. Lopez. (Tr. at 11:17-23.)

    The government argued that the contact between Mrs. Lopez and jurors negatively affected the government's ability to receive a fair trial. Specifically, the government argued that contact between a defendant's family members and jurors personalized the deliberative process because the jurors would be likelier to consider the impact of a conviction not only on the defendant, but

on his family members as well. (Tr. at 7:6-20, 8:8-17, 13:2-11, 19:11-21, 28:17-29:25.) As such, the government requested that the court excuse Jurors Nos. 5 and 6 and Alternate Juror No. 1 and substitute alternate jurors to whom no communications had been made. (Tr. at 13:19-23.) Greer's counsel conferred with the Public Defender's Officer concerning the situation and expressly objected to the government's request, stating that the jurors should not be replaced, but instead, an admonition should be given to the jury. (Tr. at 5:23-25, 15:10-22, 17:23-18:7, 25:21-26:4.)

The court acknowledged the impropriety of the contact between Alternate Juror No. 1 and Mrs. Lopez at the elevator, but the court found the communication to be "spontaneous," "friendly," and "unplanned." (Tr. at 4:20-21, 7:5.) Furthermore, concerning Mrs. Lopez's contact with the jurors in the lunchroom, although the court agreed that personalization with a family member of a defendant might make it tougher for a jury to convict (Tr. 19:22-20:1, 27:12-15), the court found the conversation in the lunchroom was less problematic because Mrs. Lopez was present throughout the entire trial and the jurors had already known that she was the mother of a defendant. (Tr. at 7:21-22, 22:9-12.) Therefore, the court found that an admonition to the jury would be sufficient to remedy the issue. (Tr. at 31:6-32:2.) Greer's counsel was in agreement and stated: "I think that's a good suggestion. . . . It's a good resolution." (Tr. at 32:11,15.)

The exact language of the admonition was discussed and debated at length until all parties reached an agreement. (Tr. at 39:8-53:19.) Ultimately the court gave the following instruction to the jury:

6

> It's come to my attention that there may have been some brief communication between some member of the defendants' families and some jurors. There should be [sic] no contact between the jury and members of the defendants's [sic] families or law enforcement officers. And I know sometimes it's difficult, but you've got to try to avoid that.
> And I am going to reiterate to you what I told you previously. You must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means you must decide the case solely on the evidence before you. You will recall that you took an oath promising to do so at the beginning of the case. The punishment provided by law for these crimes is for the Court to decide and you may not consider punishment in deciding whether the government has proven its case against the defendants beyond a reasonable doubt. In following my instructions, you must follow all of them and not single out some and ignore others. They're all equally important.

(Tr. at 67:18-68:12.)

Greer now argues that the court should have asked Alternate Juror No. 1 whether she relayed to other jurors her private conversation with Mrs. Lopez and whether the communications affected her ability to be fair and impartial. (Motion to Vacate pp. 7-8.) Greer also argues that the court should have questioned Jurors Nos. 5 and 6 concerning their contact with Mrs. Lopez in the lunchroom. (Id. p. 8.)

"Generally speaking, '[p]rivate communications, possibly prejudicial, between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness is made to appear.'" Tong Xiong v. Felker, 681 F.3d 1067, 1076 (9th Cir. 2012) (quoting Mattox v. United States, 146 U.S. 140, 142 (1892)). "However, this does not mean that all extraneous information is per se prejudicial." Id. The Supreme Court has recognized that "it is virtually impossible to shield jurors from every contact or

7

influence that might theoretically affect their vote." <u>United States v. Olano</u>, 507 U.S. 725, 738 (1993) (quoting <u>Smith v. Phillips</u>, 455 U.S. 209, 217 (1982)).  Indeed, "certain chance contacts between witnesses and jury members—while passing in the hall or crowded together in an elevator—may be inevitable." <u>Caliendo v. Warden of California Men's Colony</u>, 365 F.3d 691, 696 (9th Cir. 2004) (citation omitted).  Thus, when an unauthorized communication with a juror was "de minimis," "the <u>defendant</u> must show that the communication could have influenced the verdict before the burden of proof shifts to the prosecution." <u>Id.</u> (emphasis added).  "A defendant must offer sufficient evidence to trigger the presumption of prejudice." <u>Id.</u> (citation omitted).  "A trial court has considerable discretion in determining whether to hold an investigative hearing on allegations of jury misconduct or bias and in defining its nature and extent." <u>United States v. Olano</u>, 62 F.3d 1180, 1192 (9th Cir. 1995).

A "casual, time-of-the-day greeting" in the men's room between a juror and a federal agent for the prosecution was found to be de minimis communication. <u>United States v. Day</u>, 830 F.2d 1099, 1103-04 (10th Cir. 1987).  An investigating officer's entering the jury room during deliberations without the court's permission to set up a video machine to replay a videotape of a witness' interrogation was also found to be "innocuous." <u>Lee v. Marshall</u>, 42 F.3d 1296, 1297, 1299 (9th Cir. 1994).  For example, in <u>Olano</u>, one juror encountered a defendant and his wife as the juror left a courthouse elevator.  62 F.3d at 1192.  The defendant's wife told the juror that she had a brother by the same name as the juror. <u>Id.</u>  The juror acknowledged that, although he had never met her brother,

8

their mail occasionally was mixed up. Id. When the conversation was brought to the district court's attention, the district court re-admonished the jury not to speak with the parties and did not excuse the juror or entertain a motion for mistrial sua sponte. Id. The Ninth Circuit held that the district court did not abuse its discretion in not entertaining sua sponte a motion for mistrial because, although inappropriate, the juror's conversation with the defendant's wife was brief, and it did not relate to the trial. Id.

Indeed, "mere contact or association between a witness . . . and a member or members of the jury [does not render] the trial unfair in the constitutional sense; more must appear to affect the validity of a conviction." Helmick v. Cupp, 437 F.2d 321, 322 (9th Cir. 1971). The "more" was found in Turner v. State of Louisiana, 379 U.S. 466 (1965). In Turner, the defendant was convicted of murder after a three-day jury trial. Id. at 466. Two deputy sheriffs who gave key testimony leading to the defendant's conviction were in close and continual association with the jurors in and out of the courthouse during the three-day trial: the deputies ate with the jurors, freely conversed with them, did errands for them, and drove them to their lodgings each night. Id. at 467-68. The Supreme Court found that the close and continual relationship between the deputies and the jurors was prejudicial because the contact was not a "brief encounter, but [] a continuous and intimate association" "which could not but foster the jurors' confidence in those who were their official guardians during the entire period of the trial. And Turner's fate depended upon how much confidence the jury placed in these two witnesses." Id. at

9

473-74.  Thus, the Court held that Turner had been denied right to fair trial by an impartial jury.

Here, the contact between the Jurors and Mrs. Lopez should be characterized as merely a chance encounter and nothing more. Similar to the conversation between the juror and the defendant's wife in Olano, 62 F.3d at 1192, the conversation between the Jurors here and Mrs. Lopez was also brief.  Unlike Olano, the statements made at lunch and by the elevator had some relationship to the case, but they were tangentially related and, as the Court stated, innocuous.  Such spontaneous and friendly comments are de minimis and insufficient to trigger the presumption of prejudice.  See Day, 830 F.2d at 1103-04; Caliendo, 365 F.3d at 696.  In addition, Greer offers no explanation as to how Mrs. Lopez's contact with the jurors prejudiced him.  Unlike the continuous and intimate association among the deputies and jurors in Turner that helped build up the jurors' confidence in the deputies' testimony, 379 U.S. at 473-74, Mrs. Lopez's brief encounter with the Jurors did not have an effect on the credibility of any witness.  Mrs. Lopez did not testify at Greer's trial; therefore, her credibility would not have an impact on Greer's conviction.  Greer provides no evidence tending to show that there existed a continuous and intimate association between the Jurors and his co-defendant's mother that would unfairly prejudice him in receiving a fair trial. Greer does not claim that he would have been acquitted if the court had conducted a more extensive inquiry into the contact between the jurors and Mrs. Lopez.  As Greer has failed to offer any evidence that would show how the communication influenced his guilty

verdict, there is no presumption of prejudice.  See Caliendo, 365 F.3d at 696.

### D. Greer's claim of ineffective assistance of counsel must fail.

Greer asserts that both his trial and appellate counsel should have raised the issues he is arguing in the instant motion and their failure to do so constituted ineffective assistance of counsel.

To prevail on a claim of ineffective assistance of counsel, a convicted defendant must show both (1) that counsel's performance was deficient; and (2) that "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). The defendant bears the burden of establishing both prongs of the claim of ineffective assistance of counsel. United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  If the defendant fails to satisfy either prong, the claim of ineffective assistance of counsel must fail. Strickland, 466 U.S. at 687.  In order to show prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; Ortiz v. Stewart, 149 F.3d 923, 932 (9th Cir. 1998).  A reasonable probability is less than a preponderance of the evidence and is a probability sufficient to undermine confidence in the outcome.  See Kyles v. Whitley, 514 U.S. 419, 434 (1995); Strickland, 466 U.S. at 694.

"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Id. at 697.

11

Here, Greer argues that counsel was ineffective for not making the arguments the Court rejected above. For the reasons discussed, Greer has not shown prejudice, and his ineffective assistance of counsel claim fails as a result.

**IV. CONCLUSION**

For the foregoing reasons, the 2255 motion is DENIED.

IT IS SO ORDERED.

Dated: August 27, 2013

DEAN D. PREGERSON
United States District Judge